JKMcD: USAO#2015R00339

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2019 DEC 18  PM 3:45

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RONALD MAURICE SMITH,<br><br>Defendant. | CRIMINAL NO. CCB-19-0599<br><br>(Extortion Under Color of Official Right, 18 U.S.C. § 1951(a); Felon in Possession of a Gun, 18 U.S.C. 922(g)(1); Forfeiture) |

## INDICTMENT

## COUNT ONE

### (Conspiracy to Commit Extortion)

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times material to this Indictment:

**A.  Baltimore City Departments**

1. The City of Baltimore is an incorporated municipality in the State of Maryland that, pursuant to its Charter, established various administrative departments including the Department of Public Works ("DPW") and the Department of Transportation ("DOT").

2. DPW is responsible for managing solid waste, wastewater, storm water and clean water services for over 1.8 million residents in the Baltimore metropolitan area. Within DPW, the Water and Wastewater Maintenance Division ("WWMD") was responsible for supplying drinking water and sewer service within the service area.

3. The Baltimore City Code, Article 24 entitled "Water" in Section 21-6 (b) entitled "Prohibited Conduct" stated:

> "Unless authorized by law or by permit from the Department of Public Works, no person may

1

      (1) connect, disconnect, tap, or interfere or tamper with any of the... mains, pipes, conduits, connections, taps, valves, engines or machinery belonging to the City;

      (2) connect with any...main, pipe, conduit, connection, tap, valve, engine or machinery for the purpose of using or wasting water;

      (3) tamper in any way with any meter used to register water consumption; or

      (4) introduce water to any premises not entitled to use it."

4. When a Baltimore City property owner planned to install new or upgraded water service, Baltimore City required the property owner to use a bonded, approved utilities contractor to perform the work; DPW did not perform installation of new water, sewer or fire line services. When the Baltimore City property was a commercial property, the property owner was required to install a sprinkler system inside the building for fire protection and to install a separate connection of a designated size from the Baltimore City water main to create a separate, dedicated water supply for the sprinkler system.

5. DPW required the property owner or their utilities contractor to submit a work proposal setting forth the work to be performed for new or upgraded water service. Also the utilities contractor was required to submit to DOT the proposed project's requirements for work in the public right of way, such as street cuts and excavation to access and tap the City water mains. DOT and DPW reviewed the work proposal to determine if the estimates were appropriate for the work to be done, approved the proposal, and issued the permits necessary to perform the street cuts and access and connect to Baltimore City's water main and/or sewer system. DOT, Office of Right of Way Services, assessed a $300 traffic control fee and an inspection fee for City costs related to street-cut permits, inspections and water meter purchases. The inspection fee was assessed as 9% of the contract cost for the water utilities work. DPW and DOT required the utilities contractor to obtain a bond or letter of credit for the total cost of the renovation.

6. In Baltimore City, water mains and sewer pipes are separate systems which are

generally located underneath public streets or alleys. Each property which receives water service must be connected to a DPW water main. The connection is from the DPW water main through a pipe to a water meter vault and from the water meter vault through a pipe to the interior of the house or building. Once installed, the meter vault can be accessed by lifting the meter vault's plate, usually located near the property and on the sidewalk. When the plate is lifted, the water meter is visible. Likewise, the house or building has a pipe which connects to the DPW sewer pipes.

7. After a new or upgraded connection from the City water main to the meter vault was completed, DPW inspected the work and, if approved, DPW created a customer service account to bill the property owner for the purchase of the water meter and to measure and bill for water usage at the property.

8. DPW prohibited all WWMD employees from installing private water services and accepting a monetary payment while on duty, installing private water service while working on "City time," and soliciting private jobs while they were on duty.

**B.    Relevant Persons and Entities**

9. At all times material to this Indictment, **RONALD MAURICE SMITH ("SMITH")** was a supervisor in the Water and Waste management Division of DPW. **SMITH** was responsible for receiving work orders, dispatching work crews, and supervising work crews on DPW job sites in connection with service repairs to City water mains, pipes, taps, connections, and valves. **SMITH** has never possessed a plumbing license from the State of Maryland. **SMITH** worked out of the 806 North Haven Street DPW facility and supervised approximately eight (8) employees. **SMITH** generally worked the night shift from midnight to 8 a.m.

10. At all times material to this Indictment, Philip Michael Loverde ("Loverde") was a

3

licensed plumber in the State of Maryland and one of the owners of All Service Plumbing and Drain Cleaning and All Service Plumbing and Heating (collectively "All Services."). All Services provided plumbing and heat system installation and repair services in the Baltimore area. All Services was not approved by the City of Baltimore as a bonded approved contractor able to perform work on the City's water mains.

11. At all times material to this Indictment, a Project Manager, identified as G.H., was employed with TRF Development Partners ("TRF"), a nonprofit housing affiliate and community developer with its main offices in Philadelphia, PA. TRF Development Properties contracted with East Baltimore Historic II LLC to provide property rehabilitation and construction services. Both TRF and East Baltimore Historic II engaged in interstate commerce by soliciting private investors in Pennsylvania and elsewhere and by engaging in building projects in which services and materials moved in interstate commerce.

12. At all times material to this Indictment, D.T., S.C. and A.K. were private citizens and/or property owners developing private properties in Baltimore City.

13. At all times material to this Indictment, D.T., S.C., and A.K. performed renovations and construction which included purchases of items and services which originated in interstate commerce.

### THE CHARGE

14. During the period from, in and around January 2014 to February 2016, in the District of Maryland and elsewhere, the Defendant,

**RONALD MAURICE SMITH,**

Loverde, and others, who are known and unknown to the Grand Jury, did knowingly conspire to obstruct, delay and affect commerce and the movement of articles and commodities in commerce

by extortion, and attempt to do so, that is **SMITH** obtained property with assistance from Loverde not due to **SMITH** or his office, from private parties, under color of official right, in violation of Title 18 United States Code, Section 1951(a).

## PURPOSE OF THE CONSPIRACY

15. It was the purpose of the conspiracy that **SMITH** would personally enrich himself and others by using Baltimore City employees, equipment, and materials to install new and upgraded water, sewer, and fire line services for private developers and property owners without obtaining the required permits, approvals, and inspections from DPW and DOT, without paying the Baltimore City fees for water, sewer and/or fire line service installation permits and DOT traffic control, and without installing water meters while charging lower prices to the private developers and property owners than City approved, bonded, licensed utilities contractors would charge.

## MANNER AND MEANS OF THE CONSPIRACY

16. It was a part of the conspiracy for Loverde to obtain plumbing and heating contracts for All Services and to direct developers, contractors, and property owners to **SMITH,** who used his authority as a DPW supervisor to cause a DPW work crew using DPW materials, including a heavy equipment operator using DPW equipment, to install new water services to private properties, all without obtaining the necessary permits.

17. It was a part of the conspiracy for **SMITH** to be paid in cash by the private property owner or developer either because **SMITH** asked for a cash payment or by causing Loverde to create false All Services invoices for work performed by **SMITH** and DPW crews and causing Loverde to submit that All Services invoice to the private property owner or developer.

18. It was part of the conspiracy for Loverde to submit the false All Services invoice, and when All Services was paid, for Loverde to cash the check and provide the cash to **SMITH.**

19. It was part of the conspiracy for **SMITH** to cause other DPW employees to create and submit false and fictitious DPW service requests and work orders for the purpose of concealing the use of DPW employees and equipment to install new water, sewer and/or fire line services.

20. It was a part of the conspiracy for **SMITH** to cause DPW personnel to place metal plates over the street cuts DPW personnel had made to install the new water services and eventually to use DPW equipment, personnel and materials to re-pave where the street cuts and excavation had occurred.

21. It was a part of the conspiracy for **SMITH** to use DPW crews, equipment, and material to make street cuts and excavate to provide new water and sewer services for four properties on Quarry Avenue, Baltimore, MD, and at 1234, 1236, 1238, 1240, 1242, 1244, 1246, 1248 and 1250 N. Gay Street, Baltimore, Maryland, and 1759 East Preston Street, Baltimore, MD.

## OVERT ACTS

22. In the District of Maryland and elsewhere, co-conspirators **SMITH,** Loverde, and others committed the following overt acts:

   a. In and around fall 2014, **SMITH** using a DPW crew and equipment performed work at four new houses on Quarry Avenue, Baltimore, MD.

   b. In October or November 2015, GH on behalf of TRF needed to install a required fire line at the commercial property at 1759 East Preston Street, and after receiving a $35,000 estimate from a bonded approved contractor, asked Loverde to obtain an estimate from **SMITH** to install a fire line at 1759 East Preston Street.

   c. On October 22, 2015, Loverde telephoned **SMITH** and asked **SMITH** for an estimate to install a four inch fire line at 1759 East Preston Street and instructed **SMITH** to meet with GH at that location.

d. On October 23, 2015, **SMITH** and GH spoke via telephone and GH stated that he would meet **SMITH** at North Gay Street on October 23, 2015.

e. In October or November 2015, GH told Loverde that he met **SMITH** at 1759 East Preston and **SMITH** provided an estimate of $17,500, for the fire line installation at 1759 East Preston Street, which was much cheaper that the City approved and bonded contractor's estimate.

f. In the fall of 2015, Loverde and GH agreed that Loverde would submit a false All Services purchase order and invoice, in the amount of $17,500, to TRF for the purpose of obtaining payment through All Services while concealing **SMITH**'s and DPW's involvement in the installation of the fire line at 1759 East Preston Street.

g. On October 30, 2015, **SMITH** caused a DPW work order to be generated and a DPW investigative report entry indicating that DPW employees conducted a TV inspection at 1759 East Preston Street.

h. On or about November 2, 2015, Loverde submitted a false All Services purchase order and invoice to TRF, indicating that All Services installed the fire line at 1759 East Preston Street.

i. On or about November 12, 2015, **SMITH** and Loverde through G.H. caused TRF to issue a check to All Services in the amount of $17,500.

j. On December 14, 2015, Loverde and **SMITH** spoke via telephone and Loverde warned **SMITH** that a DPW official arrived at 1759 East Preston Street and questioned the work that was done related to the street cut.

k. On or about December 14, 2015, **SMITH** and GH spoke via telephone.

18 U.S.C. § 1951(a)

## COUNTS TWO THROUGH FOUR

### (Extortion)

The Grand Jury for the District of Maryland further charges:

1. Paragraphs One through Thirteen of Count One are incorporated by reference.

2. On or about the dates set forth below, in the District of Maryland, the Defendant,

**RONALD MAURICE SMITH,**

did knowingly obstruct, delay and affect commerce and the movement of articles and commodities in commerce by extortion, that is **SMITH,** a public employee in the City of Baltimore Department of Public Works, obtained property from another, namely A.K., not due to **SMITH** or his office, under color of official right, in connection with the installation of new water service at residences on North Fulton Avenue, Madison Avenue and Callow Avenue:

| Count | Address | Date | Amount |
|---|---|---|---|
| Two | 24 N. Fulton Ave. | May 16, 2015 | $2,000.00 |
| Three | 1423 & 1431 Madison Ave. | July 20, 2015 & July 24, 2015 | $3,000.00 & $3,000.00 |
| Four | 2306 Callow Ave. | October 2, 2015 | $3,000.00 & $1,500.00 |

18 U.S.C. § 1951 (a)

## COUNT FIVE

### (Extortion)

The Grand Jury for the District of Maryland further charges:

1. Paragraphs One through Thirteen of Count One are incorporated by reference.

2. In and around November 12, 2015, in the District of Maryland, the Defendant,

**RONALD MAURICE SMITH,**

did knowingly obstruct, delay and affect commerce and the movement of articles and commodities in commerce by extortion, and attempt to do so, that is **SMITH,** a public employee in the City of Baltimore Department of Public Works, with Loverde, obtained property from TRF, in the approximate amount of $17,500, not due to **SMITH** or his office, under color of official right, in connection with the installation of a new fire line at the commercial property, 1759 East Preston Street, Baltimore, MD.

18 U.S.C. § 1951(a)

## **COUNT SIX**

### (Extortion)

The Grand Jury for the District of Maryland further charges:

1. Paragraphs One through Thirteen of Count One are incorporated by reference.

2. In and around late 2015, in the District of Maryland, the Defendant,

**RONALD MAURICE SMITH,**

did knowingly obstruct, delay and affect commerce and the movement of articles and commodities in commerce by extortion, and attempt to do so, that is **SMITH,** a public employee in the City of Baltimore Department of Public Works, obtained property from another, namely S.C., in the approximate amount of $10,000, not due to **SMITH** or his office, under color of official right, in connection with the installation of new water service and sewer service at four residences at Elwood Street and East Baltimore Avenue, Baltimore, MD.

18 U.S.C. §1951(a)

## COUNT SEVEN

### (Unlawful Possession of a Firearm)

The Grand Jury for the District of Maryland further charges:

On or about February 5, 2016, in the District of Maryland, the defendant,

### RONALD MAURICE SMITH

having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, a .380 caliber Taurus handgun bearing serial number KRJ79519 and .380 caliber ammunition,.

18 U.S.C. § 922(g)(1)

## FORFEITURE

The Grand Jury further finds that:

1. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the Defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, § 981 and Title 28, United States Code, § 2461, in the event of the defendant's conviction under Counts One through Six.

2. As a result of the offenses set forth in Counts One through Six, the Defendant,

**RONALD MAURICE SMITH,**

shall forfeit to the United States all property, real or personal, which constitutes or is derived from proceeds traceable to the extortion under color of official right, including but not limited to, the following:

(a) a sum of money equal to the value of the monies **SMITH** received, which is at least **$64,000**.

3. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, § 924(d) and Title 28, United States Code, Section 2461(c) in the event of the defendant's conviction under Count Seven.

4. As a result of the offense set forth in Count Seven, the defendant shall forfeit to the United States the firearm and ammunition identified in that offense.

### SUBSTITUTE ASSETS

5. If any of the assets described in this Indictment as being subject to forfeiture, as a result of any act or omission of the Defendant,

**RONALD MAURICE SMITH,**

(a) cannot be located upon the exercise of diligence;

(b) have been transferred, or sold to, or deposited with a third person;

(c) have been placed beyond the jurisdiction of the Court;

(d) have been substantially diminished in value; or

(e) have been commingled with other property which cannot be subdivided without difficulty;

It is the intent of the United States, pursuant to Title 18, United States Code § § 981(p); Title 28, United States Code §2461 and Title 21, United States Code § 853, to seek forfeiture of any other property belonging to the defendant up to the value of at least **$64,000.**

18 U.S.C. § 981 (a)(1)(A);18 U.S.C. § 1956 (c)(7); 21 U.S.C. § 853; 28 U.S.C. § 2461(c)

Robert K. Hur
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**
Foreperson

December 18, 2019
Date